# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| ADRINNE HOOKER, | * |
| Plaintiff, | * |
| v. | Case No.: GJH-18-2352 |
| | * |
| TUNNELL GOVERNMENT SERVICES, INC., | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Adrinne Hooker ("Plaintiff") brings this action against her former employer, Tunnell Government Services, Inc. ("Defendant"), alleging that it violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, and the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. § 3-507.2 ("MWPCL"), when it terminated her because of her inability to work due to injury and refused to allow her to apply for short-term and long-term disability benefits. ECF No. 20. After Plaintiff filed a complaint in state court, Defendant removed the action to this Court and then moved to dismiss for failure to state a claim. ECF Nos. 1, 6. The Court granted the motion in part and denied it in part and granted Plaintiff leave to amend her complaint. ECF No. 16 at 12.[1] Plaintiff has amended her complaint and Defendant has submitted a partial Motion to Dismiss. ECF No. 22. Plaintiff has opposed the motion, ECF No. 24, and Defendant has replied, ECF No. 25. No

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to page numbers generated by that system.

1

hearing is necessary. *See* Loc. Rule 105.6. (D. Md.). For the following reasons, the Court will grant in part and deny in part Defendant's partial Motion to Dismiss.

I. **BACKGROUND**[2]

Defendant hired Plaintiff as a senior quality assurance specialist in early 2014 and paid her an annual salary of approximately $100,000. ECF No. 20 ¶ 4. Defendant also offered Plaintiff fringe benefits, provided to all of Defendant's employees, including short-term and long-term disability insurance. *Id.* ¶¶ 4, 6. These benefits were described in Defendant's employee manual. *Id.* ¶ 6. On March 25, 2015, Plaintiff was injured in a car accident and suffered injuries to her neck and back. *Id.* ¶ 5. She experienced serious and continuing pain from these injuries and was unable to work full-time for a period of months. *Id.*

On June 15, 2015, Defendant terminated Plaintiff's employment because of her inability to perform work on a full-time basis. *Id.* ¶ 7. At or about that time, Plaintiff requested that she be allowed to apply for both short-term and long-term disability benefits. *Id.* Defendant denied her request. *Id.* Following her termination, Plaintiff was unemployed and unable to find comparably compensated work for more than one year. *Id.* ¶ 8. Plaintiff claims that she lost more than $100,000 in income as a result of the denial of disability coverage. *Id.* ¶ 9.

On June 13, 2018, Plaintiff filed suit in the Circuit Court for Montgomery County, Maryland alleging that Defendant's refusal to allow her to apply for short-term and long-term disability coverage was an unlawful denial of compensation under the MWPCL and a breach of her employment contract. ECF No. 1-2 at 10–14.[3] On July 31, 2018, Defendant filed a timely Notice of Removal of the action to this Court, relying on federal question and supplemental

---

[2] Unless otherwise stated, these facts are taken from Plaintiffs' Complaint, ECF No. 1, and are presumed to be true.
[3] Plaintiff also alleged that Defendant's employee manual promised unlimited sick leave and that she was denied such leave in breach of her employment contract. ECF No. 1-2 at 11, 13. Plaintiff has not renewed that allegation in her Amended Complaint.

jurisdiction. ECF No. 1. Defendant asserted that Plaintiff's claims relating to long-term disability benefits raised federal questions because they were completely preempted by ERISA. ECF No. 1 ¶¶ 2, 6. Plaintiff filed a Motion to Remand arguing that the long-term disability plan described in plan documents Defendant had submitted was not in effect when Plaintiff was injured. ECF No. 7 at 4. Defendant filed a motion for leave to amend its notice of removal and provided additional materials showing that the plan had been in effect since 2001, though it had been funded through different policies between that time and the time of Plaintiff's injury. ECF No. 10-1 at 4–6.

In a Memorandum Opinion issued on February 14, 2019, the Court denied Plaintiff's Motion to Remand, granted in part and denied in part Defendant's Motion to Dismiss, granted Plaintiff leave to amend her complaint, and granted Defendant's motion for leave to amend the notice of removal. ECF No. 16 at 12. The Court held that Plaintiff's claims for access to long-term disability benefits were completely preempted by ERISA, which granted the Court federal question jurisdiction over those claims and supplemental jurisdiction over Plaintiff's state claims. *Id.* at 7. The Court then applied the rule that preempted state law claims falling within the scope of ERISA's civil enforcement provision should be treated as federal claims under § 502 of ERISA, 29 U.S.C. § 1132, rather than dismissed. *Id.* at 8–9 (citing *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 187 (4th Cir. 2002).

The Court observed that Plaintiff's claim naturally converted to a claim under § 510 of ERISA, codified at 29 U.S.C. § 1140, which prohibits discharging an employee to interfere with the employee's exercise or attainment of rights under an ERISA-governed plan. *Id.* at 9. Drawing all reasonable inferences in Plaintiff's favor, the Court concluded that Plaintiff had sufficiently alleged that Defendant discharged her to interfere with her right to apply for long-term disability benefits under the operative plan. *Id.* Accordingly, the Court declared that Plaintiff's MWPCL

and breach of contract claims for long-term disability benefits would be treated as a federal claim under §§ 502 and 510 of ERISA and that Plaintiff would be granted leave to amend the Complaint. *Id.* at 10. The Court also found that Plaintiff had stated claims that she was improperly denied short-term disability benefits in violation of the MWPCL and in breach of her contract, but that she had failed to adequately allege nonpayment of sick leave. *Id.* at 10–11.

Plaintiff filed an Amended Complaint on March 11, 2019. ECF No. 20. The Amended Complaint asserts four counts. Count I alleges that Defendant violated the MWPCL by denying Plaintiff "short-term disability insurance," which Plaintiff alleges she requested on the day she was terminated, June 15, 2015. ECF No. 20 ¶¶ 13–15. Count II, asserted pursuant to 29 U.S.C. § 1132, states that Defendant breached its duties as plan administrator and its fiduciary duty to Plaintiff under its long-term disability plan by denying her "request" to "be allowed to apply for long-term disability payments" and by "fail[ing] to provide to Plaintiff the necessary forms to apply for said benefit." *Id.* ¶¶ 23, 25. Count III, which cites 29 U.S.C. § 1140, makes the same factual allegations as Count II and asserts that Defendant "unlawfully interfered with Plaintiff's efforts to obtain" long-term disability benefits "[b]y failing to provide Plaintiff with the necessary benefit application forms and to otherwise assist her in applying for said benefits." *Id.* ¶¶ 33–34. Count IV, repeating the same facts, alleges that Defendant violated 29 U.S.C. § 1132(c)(1)(B) "[b]y failing to provide Plaintiff with the necessary benefit application forms and to otherwise assist her in applying for said benefits." *Id.* ¶¶ 41–42.

Though the language varies somewhat between the counts, each count repeats the allegation that "[o]n June 15, 2015, Defendant terminated plaintiff's employment due to her temporary inability to perform her work on a full-time basis as a result of an automobile accident." *Id.* ¶¶ 13, 22, 31, 39. The three ERISA counts each then assert that "[a]t that time,

4

Plaintiff requested that she be allowed to apply for long-term disability payments," but that "[a]cting as plan administrator and fiduciary, this request was denied by Defendant, and Defendant failed to provide to Plaintiff with [sic] the necessary forms to apply for said benefit." *Id.* ¶¶ 23, 32, 40. For Count I, Plaintiff alleges that she lost more than $20,000 in income and seeks treble damages. *Id.* ¶¶ 16, 17. For Counts II and III, Plaintiff asserts that she lost more than $100,000 in income as a result of Defendant's ERISA violations and seeks that amount. *Id.* ¶¶ 26, 34. For Count IV, Plaintiff seeks statutory penalties under 29 U.S.C. § 1132(c)(1)(B) of $100 per day from the date of refusal to provide application forms, totaling $136,300. *Id.* ¶ 42.

Defendant filed a partial answer to the Amended Complaint on March 29, 2019, responding to the allegations in Count I. ECF No. 23. Defendant also filed the pending Motion to Dismiss Counts II, III, and IV of the Amended Complaint for failure to state a claim. ECF No. 22. Plaintiff filed an Opposition on April 8, 2019, ECF No. 24, and Defendant filed a Reply on April 22, 2019, ECF No. 25.

## II. STANDARD OF REVIEW

To state a claim that survives a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The "mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). To determine whether a claim has crossed "the line from conceivable to plausible," the Court must employ a "context-specific" inquiry, drawing on the court's "experience and common sense." *Iqbal*, 556 U.S. at 679–80 (quoting *Twombly*, 550 U.S. at 570). The Court accepts "all well-pled facts as true and construes these facts in the

light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The Court must "draw all reasonable inferences in favor of the plaintiff." *Id.* at 253 (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). "[B]ut [the Court] need not accept the legal conclusions drawn from the facts, and . . . need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Id.* (first alteration in original) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

"Under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider exhibits, without converting the motion to dismiss to one for summary judgment." *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 501 (D. Md. 2019) (citing *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015)). "In particular, a court may consider documents that are 'explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits . . . .'" *Id.* (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)). The Court may "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166. Pursuant to these principles, a court may properly consider ERISA plan documents on a motion to dismiss. *Clark v. BASF Corp.*, 142 F. App'x 659, 661 (4th Cir. 2005).

### III. DISCUSSION

The majority of the arguments in Defendant's Motion to Dismiss, without explicitly saying so, ask the Court to treat this case as an appeal of a denied claim for benefits under an ERISA-governed disability plan. A broad body of precedent sets the role of courts in adjudicating such cases, some of which Defendant points to in its briefing. But Defendant's

arguments obscure an essential distinction between this case and the more common benefits denial cases: Plaintiff does not allege that she filed a benefits claim that was improperly denied, but rather that Defendant terminated her because she was allegedly unable to work and prevented her from filing the disability claim that she sought to submit. For that reason, the frameworks that courts often employ in ERISA plan benefits cases are not fully applicable here. While some of Defendant's arguments about the structure of the private ERISA enforcement regime are accurate, others relying on this mischaracterization of Plaintiff's actual grievance must fail. Accordingly, the Court will grant in part and deny in part Defendant's motion.

### A. ERISA § 510 Claim

Although Plaintiff's claim under § 510 of ERISA, 29 U.S.C. § 1140, is brought as Count III of the Amended Complaint, the Court finds it most efficient to consider it first. § 510 provides that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan[.]" 29 U.S.C. § 1140. "This section of ERISA 'prevents unscrupulous employers from discharging' employees to stop them from obtaining benefits." *Miller v. CSX Transp., Inc.*, No. GJH-18-2022, 2019 WL 1992105, at *5 (D. Md. May 3, 2019) (citing *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 239 (4th Cir. 1991)).

In *Kirby v. Frontier Medex, Inc.*, Judge Hollander of this District explained the process for adjudicating a § 510 claim:

> In general, there are "two avenues" at trial by which a plaintiff may prove interference in violation of 29 U.S.C. § 1140. An ERISA interference claim may be proven through direct evidence of the employer's specific intent to interfere, such as an admission by the employer that it fired the employee to prevent the

vesting of his benefits. *See Goode v. Am. Veterans, Inc.*, 874 F. Supp. 2d 430, 452 (D. Md. 2012). The Fourth Circuit recognizes, however, that "employers do not often articulate the motivation for their actions, particularly if those actions are unlawful." *Id.* Accordingly, employees may also utilize the burden-shifting approach articulated by the Supreme Court in the Title VII context in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.*

Under the McDonnell Douglas scheme, the plaintiff at trial must first establish, by a preponderance of the evidence, a *prima facie* case of interference. *Id.* To establish a *prima facie* case of ERISA interference, the employee must demonstrate that (1) the employer performed a prohibited action; (2) the action was taken for the purpose of interfering; and (3) the action interfered with the attainment of a right to which the employee is, or may become, entitled. *Id.* (citing *Gavalik v. Cont'l Can Co.*, 812 F.2d 834, 852 (3d Cir. 1987)). If the plaintiff establishes a *prima facie* case, a presumption of illegal interference arises, and the burden of production shifts to the employer to produce evidence of a legitimate reason for the challenged conduct. See *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011) (Title VII case). "If the employer carries its burden and successfully demonstrates a legitimate, nondiscriminatory explanation, the burden then shifts back to the plaintiff, who is given the opportunity to establish by a preponderance of the evidence that the defendant's explanation is pretextual." *Goode*, 874 F.Supp.2d at 853.

These two methods of proof establish the standards to prove ERISA interference at trial. But, at the motion to dismiss stage, they only serve to inform a court's evaluation of the allegations. Accordingly, as in the analogous context of a Title VII discrimination claim, a complaint need not "contain specific facts *establishing* a *prima facie* case . . . under the framework set forth in *McDonnell Douglas*." *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 508 (2002) (Title VII case) (emphasis added). Rather, as with any other claim falling within the purview of Rule 8(a), "to survive a motion to dismiss, the complaint must 'state a plausible claim for relief that 'permit[s] the court to infer more than the mere possibility of misconduct' based upon 'its judicial experience and common sense.'" *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir.2010), *aff'd*, — U.S. —, 132 S. Ct. 1327 (2012) (Title VII case).

No. ELH–13–00012, 2013 WL 5883811, at *8–*9 (D. Md. Oct. 30, 2013)

Count III of the Amended Complaint asserts that Defendant terminated Plaintiff on June 15, 2015 "because of her alleged inability to perform her work on a full-time basis," and that "[a]t that time, Plaintiff requested that she be allowed to apply for long-term disability payments," but that "this request was denied by Defendant," which "failed to provide Plaintiff

8

the necessary forms to apply for said benefit." ECF No. 20 ¶¶ 31–32. Plaintiff further asserts that by failing to provide her with benefit application forms or to assist her in applying, Defendant interfered with her efforts to obtain those benefits and violated § 510. *Id.* ¶¶ 33–34. Documents governing the long-term disability plan that Defendant states was in effect at the time of Plaintiff's termination provide procedures for filing claims, including that "[t]he Policyholder will provide appropriate claim forms to assist you in filing claims." ECF No. 10-1 at 137, 151; ECF No. 22-1 at 2.

Plaintiff's allegations in Count III state a plausible claim for relief for unlawful interference. Just as the Court determined in the prior Memorandum Opinion, "[d]rawing all reasonable inferences in Plaintiff's favor, Plaintiff has alleged that Defendant discharged her to interfere with her right to apply for long-term disability benefits under the Plan." ECF No. 16 at 9. To be sure, the allegations supporting Count III are stated with limited detail about several aspects of the events at issue, including the timing of Plaintiff's termination in connection with her request for benefit forms and the identities of the persons with whom she spoke or interacted. But as Judge Hollander explained in *Kirby*, Plaintiff need not provide "specific facts *establishing* a *prima facie* case" at this early stage. 2013 WL 5883811, at *9. She need only set forth facts that, when construed in the light most favorable to her, make out a plausible claim, and she has done so in the Amended Complaint. *Id.*; *see also Nemet Chevrolet*, 591 F.3d at 255.

Defendant makes two related arguments in support of dismissing Count III. First, Defendant argues that the claim should be dismissed because it fails to allege that Plaintiff was subjected to employment discrimination for the purpose of interfering with her exercise or attainment of her rights under ERISA. ECF No. 22-1 at 8–9 (citing *Stiltner v. Beretta U.S.A. Corp.*, 74 F.3d 1473, 1483 (4th Cir. 1996)). According to Defendant, Plaintiff has not claimed

that Defendant discriminated against her in order to interfere with her rights under ERISA, but merely that Defendant failed to provide her benefit application forms and assist her in applying for benefits. *Id.* at 9–10. Therefore, Defendant maintains, the alleged wrongful conduct does not fall within the scope of § 510. *Id.* at 10; *see also* ECF No. 25 at 4–5.

This argument relies on an overly cramped reading of the Amended Complaint and essentially asks the Court to reverse its decision in the prior Memorandum Opinion, as Plaintiff notes in response. ECF No. 24-1 at 6. Plaintiff has alleged, in Count III and in other counts, that Defendant terminated her and refused her request to apply for long-term disability benefits. *See* ECF No. 20 ¶¶ 31–33. Plaintiff's further assertions that Defendant failed to provide her with the forms to apply or to assist her with the application simply add additional detail to the central allegation: that Defendant fired her rather than allowing her to apply for benefits. Defendant's attempt to extract these specific assertions from their broader context is unavailing.

Defendant also argues that Count III fails to state a claim because it asserts that Defendant fired Plaintiff because her injuries prevented her from working full-time rather than because she sought long-term disability benefits. ECF No. 25 at 4 (citing ECF No. 20 ¶¶ 7, 13, 22). This argument is unpersuasive. As noted previously, the Amended Complaint repeats its allegation about the reason for Plaintiff's firing in varying terms. *See* ECF No. 20 ¶¶ 7, 13, 22, 31, 39. In Count III, the complaint states that "[o]n June 15, 2015, Plaintiff's employment with Defendant was terminated by Defendant because of her alleged inability to perform her work on a full-time basis." *Id.* ¶ 31. Plaintiff's use of "alleged" demonstrates that Plaintiff challenges whether Defendant's explanation for her termination was truthful, and in turn whether Defendant's refusal to allow her to apply for long-term disability benefits was lawful.

Considered in the broader context of the complaint and construed in the light most favorable to Plaintiff, this allegation supports a plausible claim of unlawful interference under § 510.

Defendant finally argues that Plaintiff's claim under § 510 is duplicative of Count II and is "at bottom nothing more than a claim for benefits under Section 502(a)(1)(B)." ECF No. 22-1 at 10. "[A]ll that Plaintiff alleges" in Count III, Defendant claims, is that Defendant "improperly administered her claim or engaged in an improper claims administration practices [sic] that resulted in the denial of her claim." *Id.* As discussed previously, however, the Amended Complaint asserts not that Plaintiff's claim was denied, but that Plaintiff was never able to file a claim at all because Defendant barred her from doing so. Count III therefore is not duplicative of a claim for denial of benefits.

### B. ERISA § 502 Claim

In Count II, the Amended Complaint makes essentially the same factual allegations as in Count III, but asserts that Defendant violated § 502 of ERISA, 29 U.S.C. § 1132, by breaching its duties as plan administrator and its fiduciary duty to Plaintiff under its long-term disability plan by denying her request to be allowed to apply for benefits and by failing to provide her with application forms. ECF No. 20 ¶¶ 22–25. While the Amended Complaint does not specify which of § 502's subsections it proceeds under, the Court's prior Memorandum Opinion concluded that Plaintiff's state law claims were preempted by § 502(a)(1)(B) of ERISA, codified at 29 U.S.C. § 1132(a)(1)(B). ECF No. 16 at 5–10. That provision creates a private cause of action for a "participant or beneficiary" in an ERISA plan "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B).

Defendant argues that Plaintiff's claim under Count II should be dismissed without prejudice because Plaintiff has failed to exhaust her remedies provided by Defendant's disability plan, which offers procedures for appealing the denial of claims. ECF No. 22-1 at 6–7 (citing ECF No. 10-1 at 138–39). The plan documents Defendant has provided state that "[a] claimant may request an appeal of a claim denial" by written request to the disability insurer. ECF No. 10-1 at 139. Defendant correctly notes that typically, suits challenging claim denials in which the plaintiff has not exhausted remedies available under the operative plan should be dismissed without prejudice. *See Gayle v. United Parcel Serv., Inc.*, 401 F.3d 222, 226, 230 (4th Cir. 2005) (citing *Makar v. Health Care Corp.*, 872 F.2d 80, 82–83 (4th Cir. 1989)).

Exhaustion doctrine, however, is irrelevant to this case. The purposes of the doctrine are to prevent "premature interference [by courts] with an employee benefit plan's remedial provisions" and to "assemble a factual record which will assist a court in reviewing the fiduciaries' actions." *Makar*, 872 F.2d at 82 (citing *Amato v. Bernard*, 618 F.3d 559, 567–68 (9th Cir. 1980)). "In short, Congress intended plan fiduciaries, not the federal courts, to have primary responsibility for claims processing." *Id.* (citing *Kross v. W. Elec. Co.*, 701 F.2d 1238, 1244 (7th Cir. 1983)). That rationale has no bearing in this case because Plaintiff's grievance does not arise from alleged errors in the processing of a claim. It instead stems from Defendant's alleged decision to deny Plaintiff the ability to file one at all. Additionally, no "remedial provisions" in Defendant's long-term disability plan appear to permit plan member employees barred from filing a claim to challenge that decision in any manner other than filing suit. *Makar*, 872 F.2d at 82. Accordingly, the exhaustion doctrine is not an obstacle to this action.

Defendant next argues that, to the extent Plaintiff alleges a breach of fiduciary duty claim under § 503(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1), it should be dismissed because it is

duplicative of her claim under § 502(a)(1)(B). § 503(a)(1) provides that subject to other sections of ERISA, "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and— (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan[.]" 29 U.S.C. § 1104(a)(1). Here, as Defendant correctly notes, Plaintiff did not cite that provision, but nonetheless has alleged that Defendant owed her a fiduciary duty to make benefits available to her under the plan and breached this duty when it denied her request to apply for benefits and failed to provide her the necessary forms. ECF No. 22-1 at 7–8 (citing ECF No. 20 ¶¶ 21, 23, 25–25).

Defendant's argument draws from case law holding that relief under 29 U.S.C. § 1132(a)(3), which is the vehicle for enforcing breaches of the fiduciary duties imposed by § 503(a)(1), is unavailable "where the plaintiff's injury finds adequate relief in another part of ERISA's statutory scheme." *Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 105 (4th Cir. 2006) (citing *Varity Corp. v. Howe*, 516 U.S. 489, 512, 515 (1996)); *see also Wallace v. Freight Drivers & Helpers Local Union No. 557 Pension Fund*, No. 1:11–cv–02062–JKB, 2012 WL 1327921, at *6 (D. Md. Apr. 16, 2012) (holding that "plaintiffs cannot evade ERISA's carefully designed procedures and rules for the adjudication of claims for benefits simply by recasting them as claims for breach of fiduciary duty or requests for equitable relief"). Defendant argues that when the only injury a plaintiff complains of is the denial of benefits and resulting financial harm, and the relief the plaintiff seeks is an award of benefits, the claim arises under § 502(a)(1)(B). ECF No. 22-1 at 8 (citing *Wallace*, 2012 WL 1327921, at *6).

Defendant appears to be correct in part, at least to the extent that Plaintiff has remedies under other parts of ERISA's statutory scheme, namely 29 U.S.C. § 1140. As Plaintiff seems to

concede in opposing this argument, *see* ECF No. 24-1 at 5, Plaintiff cannot proceed with a claim for breach of fiduciary duty when she has alternative remedies under ERISA. *Korotynska*, 474 F.3d at 105. But it does not appear that Plaintiff has truly sought to assert such a claim here. As the Court explained in the prior Memorandum Opinion, § 502(a) "provides plan participants with a private right of action to sue to enforce certain provisions of ERISA, including § 510." ECF No. 16 at 7 (quoting *Kahalas v. Claims Admin. Corp.*, No. DKC-92-2253, 1995 WL 795666, at *3 (D. Md. Mar. 16, 1995)). Although she has included violations of these statutes as separate counts in the Amended Complaint, Plaintiff explains in her Opposition that the path the Court set out in the previous opinion is the one she intended to follow. ECF No. 24-1 at 6.

Therefore, assertions in the Amended Complaint about Defendant's breach of its fiduciary duty appear to be ancillary to the claims that Plaintiff ultimately intends to make. To the extent that Plaintiff truly does seek to assert a claim in Count II under 29 U.S.C. §§ 1104 and 1132(a)(3) for breach of fiduciary duties, such claims are dismissed. But given that Count II appears to cite § 1132 primarily as the cause of action to assert the violation of § 1140 set forth in Count III, the Court will not dismiss Count II entirely from the suit.

### C. ERISA § 502(c)(1)(B) Claim

Defendant finally argues that Count IV of the Amended Complaint, Plaintiff's claim that Defendant violated § 502(c)(1)(B) of ERISA, 29 U.S.C. § 1132(c)(1)(B), by failing to provide information that she requested, is untimely. That provision states that "[a]ny administrator . . . (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a

day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper." 29 U.S.C. § 1132(c)(1)(B).

Because ERISA provides no statute of limitations for actions under this section, "courts must 'borrow the state law limitations period applicable to claims most closely corresponding to the federal cause of action.'" *Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 337 (4th Cir. 2009) (quoting *White v. Sun Life Assurance Co. of Can.*, 488 F.3d 240, 245 (4th Cir. 2007) (*abrogated on other grounds by Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99 (2013)); *see also Pender v. Bank of Am. Corp.*, 788 F.3d 354, 368 (4th Cir. 2015). Several decisions in this District have borrowed the one-year period for suits for fines, penalties, and forfeitures set by § 5-107 of the Courts and Judicial Proceedings Article of the Maryland Code. *See Knepper v. Volvo Group N. Am.*, No. ELH-18-02879, 2019 WL 4750337, at *19 (D. Md. Sept. 27, 2019); *Wallace*, 2012 WL 1327921, at *4; *Corrado v. Life Inv'rs Owners Participation Trust & Plan*, No. DKC 08–0015, 2011 WL 886635, at *11 (D. Md. Mar. 11, 2011); *Cunningham v. Space Telescope Sci. Inst.*, No. WDQ-05-1084, 2007 WL 9780463, at *5 (D. Md. June 7, 2007); *see also Ayres v. Bierman, Geesing & Ward, LLC*, No. RWT 09cv2077, 2010 WL 481355, at *2 (D. Md. Feb. 5, 2010) (borrowing § 5-107 for a private action under the federal Consolidated Omnibus Budget and Reconciliation Act of 1985 ("COBRA")).

Plaintiff maintains, however, that these decisions are incorrect and that the Court should instead apply the general three-year limitations period for civil cases under § 5-101 of the Courts and Judicial Proceedings Article. ECF No. 24-1 at 8–9. Plaintiff points to a Maryland Court of Special Appeals decision, *Williams v. Standard Federal Savings & Loan Association*, which she asserts held that § 5-107 applies exclusively to criminal penalties and forfeitures in prosecutions and suits brought by the State of Maryland. *Id.* at 8–9 (citing 545 A.2d 708, 711 (Md. App.

15

1988)). Defendant responds that this language is merely dicta. ECF No. 25 at 6. In 2009, however, the Maryland Court of Appeals in *Master Financial, Inc. v. Crowder* resolved any ambiguity as to *Williams*' holding by adopting its construction of § 5-107 and holding that the statute's one-year limitations period "was not intended to encompass 'a private right of action to enforce a private remedy.'" 972 A.2d 864, 877 (Md. 2009) (quoting *Williams*, 545 A.2d at 711). On that basis, the Court declined to apply the one-year period to claims for civil penalties by borrowers against certain lenders under a state lending law. *See id.*; *see also Spaw, LLC v. City of Annapolis*, 156 A.3d 906, 930–31 (Md. 2017) (citing *Williams* for the same principle).

This case law raises a compelling question about whether a private suit under federal law should be constrained by a statute of limitations that Maryland courts have instructed should only be applied to actions by public authorities. The Court of Special Appeals' discussion in *Williams*, adopted by the Court of Appeals in *Master Financial*, is quite clear that Maryland recognizes a "distinction between a statutory penalty to be paid into the government treasury and a statutory private civil remedy," with attendant consequences for the applicable statute of limitations. *Williams*, 545 A.2d at 713; *see also Master Financial*, 972 A.2d at 877. In light of these decisions, the Court is compelled to conclude that the statute of limitations set by § 5-107 is not the "state law limitations period applicable to claims most closely corresponding to the federal cause of action" at issue here. *Pressley*, 553 F.3d at 337 (quoting *White*, 488 F.3d at 245). State enforcement actions for fines and penalties that are subject to a statute of limitations with "no application" to private suits for private remedies cannot be the closest analogue to actions under § 502(c)(1)(B). *Master Financial*, 972 A.2d at 877. Civil actions under § 5-101 of the Courts and Judicial Proceedings Article are instead the most similar point of state reference.

This conclusion is strengthened by the Fourth Circuit's decision in *Pressley*, which considered the proper limitations period for § 502(c)(1)(B) claims under South Carolina law. 553 F.3d at 337–39. The court held that a three-year statute of limitations for "[a]n action upon a statute for a penalty or forfeiture when the action is given to the party aggrieved" applied to § 502(c)(1)(B) claims. *Id.* at 339 (alteration in original) (quoting S.C. Code Ann. § 15-3-540). Key in the court's decision not to apply a broader statute for "[a]n action upon a statute for a penalty or forfeiture given, in whole or in part, to any person who will prosecute for it" was that that provision "was clearly intended to encompass more persons than only 'the party aggrieved.'" *Id.* (alteration in original) (quoting S.C. Code. Ann. § 15-3-570). In other words, a persuasive factor in the court's analysis of the most closely corresponding state statute was the breadth of the set of the parties whose actions the statute was intended to reach and constrain. Under that mode of reasoning, § 5-107 cannot be the proper statute of limitations to apply here, given the determination by Maryland courts that it only reaches actions by public authorities.

The Fourth Circuit's decision in *Semenova v. Maryland Transit Administration*, 845 F.3d 564 (4th Cir. 2017), in which the court considered which statute of limitations should be borrowed from Maryland law for an Americans with Disabilities Act claim, also points the Court toward this conclusion. "Although 'the most analogous statute need not be identical,'" the court there explained, "state legislation containing a statute of limitations will only control if it provides substantially 'the same rights and remedies' as the ADA." *Semenova*, 845 F.3d at 567 (quoting *Wolsky v. Med. Coll. of Hampton Roads*, 1 F. 3d 222, 224–25 (4th Cir. 1993)). Because Maryland's "Anti-Discrimination Law" did not provide a cause of action for disability discrimination in public services, the court found that it did not provide "'the same rights and remedies' as the ADA," and in turn concluded that § 5-101, rather than the Anti-Discrimination

17

Law's statute of limitations, was the closest state law analogue. *Id.* at 567–68 (quoting *Wolsky*, 1 F.3d at 224).

To be sure, *Semenova*'s reasoning does not apply in full here because the Court is not comparing substantive state legislation with federal legislation; no Maryland statutory cause of action has the same relationship to § 502(c)(1)(B) as Maryland's Anti-Discrimination Law does to the ADA. It is clear, however, that the public enforcement actions to which § 5-107 applies assert substantially different rights and remedies from suits under § 502(c)(1)(B), given that the actions § 5-107 constrains concern only rights and remedies of the government, which by definition are not available to private plaintiffs. *Cf. Wynn v. State*, 879 A.2d 1097, 1107 (Md. 2005) ("The plaintiff in a civil case is a private party, representing personal interests. The prosecutor of criminal cases is the State, representing societal interests."); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (holding that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another").

*Semenova* therefore strengthens the finding that § 5-107 does not apply to suits under § 502(c)(1)(B) and that § 5-101, which provides a three-year limitations period, applies to Plaintiff's action here. And because Plaintiff was terminated on June 15, 2015 and filed suit on June 13, 2018, her action is timely under the appropriate statute of limitations. As the Fourth Circuit has explained, the question of when the statute of limitations in an ERISA action begins to run is a matter of federal law. *Bond v. Marriot Int'l, Inc.*, 637 F. App'x 726, 731–32 (4th Cir. 2016). In *Bond v. Marriot International*, the Fourth Circuit explained that in cases in which there is no formal denial of a claim, the limitations period begins to run when "some event other than a denial of a claim should have alerted [the plaintiff] to his entitlement to the benefits he did not receive." *Id.* (alteration in original) (quoting *Cotter v. E. Conference of Teamsters Ret. Plan*, 898

F.2d 424, 429 (4th Cir. 1990)). Here, Defendant's refusal to allow Plaintiff to file a long-term disability claim on June 15, 2015 was such an event. *See* ECF No. 1-2 at 10.

As an alternative to its timeliness argument, Defendant correctly notes that § 502(c)(1) provides for imposition of penalties on a plan "administrator," which is defined elsewhere in ERISA as "the person specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C. §§ 1002(16)(A)(i). Here, the operative plan document states that the plan administrator is Defendant's parent company, Tunnell Consulting, Inc. ECF No. 10-1 at 144. Defendant insists that Plaintiff's claim should therefore be dismissed, ECF No. 22-1 at 12, while Plaintiff responds by asking for leave to amend the complaint to name Defendant's parent, ECF No. 24-1 at 10.

The Court finds that it is in the interest of justice to grant Plaintiff leave to amend the complaint again, though solely for this purpose. *See* Fed. R. Civ. P. 15(a)(2). Unlike in cases in which Plaintiffs have improperly sought penalties under § 502(c)(1) from insurers or individuals rather than their employers, *see, e.g.*, *Flores v. Life Ins. Co. of N. Am.*, 770 F. Supp. 2d 768 (D. Md. 2011); *Melendez v. Hatfield's Equip. & Dedication Servs., Inc.*, No. 1:13–cv–03684, 2014 WL 3943464 (D. Md. Aug 12, 2014); *Craine v. Hartford Life & Accident Ins. Co.*, No. 1:08CV586, 2009 WL 3258849 (M.D.N.C. Oct. 7, 2009), Plaintiff here has merely named the wrong entity in Defendant's corporate family. Further, Defendant has not opposed Plaintiff's request for leave in its Reply. ECF No. 25. Instead, it addresses this topic by "invit[ing]" the Court to consider a rule used in some circuits that failure to follow certain claim processing regulations does not give rise to § 502(c)(1)(B) penalties against plan administrators. ECF No. 25 at 9 (citing *Lee v. ING Groep, N.V.*, 829 F.3d 1158, 1161 (9th Cir. 2016)).

19

The Court will decline this invitation. First, it is not apparent that the rule Defendant advocates for would even apply in this case given that it concerns duties imposed by regulations that Plaintiff here has not cited. *See Lee*, 829 F.3d at 1161. In any event, as Defendant concedes, the Fourth Circuit has not adopted the rule, and courts in this District have permitted claims that appear to contravene it. ECF No. 25 at 7 n.4 (citing *Everette v. Liberty Life Assurance Co. of Boston*, No. TDC-16-1248, 2017 WL 2829673, at *14–*15 (D. Md. June 29, 2017)). Moreover, in raising this alternative challenge to plan administrator liability instead of reiterating the argument that it is not the administrator here, Defendant appears to have abandoned that ground of opposition to Plaintiff's claim. For these reasons, the Court finds it appropriate to grant Plaintiff leave to amend the complaint to add or correct the named defendants in this action.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss, ECF No. 22, is granted in part and denied in part. Any claims for breach of fiduciary duties under 29 U.S.C. §§ 1104 and 1132(a)(3) are dismissed. All remaining claims may proceed. A separate Order shall issue.

Date: <u>March 4 , 2020</u>　　　　　　　　　　　　　　/s/_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　GEORGE J. HAZEL
　　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge